UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TONI V. BROWN,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW SAUL,[1]<br><br>    Defendant. | Case No. 18-cv-06957-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 22 |

## INTRODUCTION

Plaintiff Toni Brown seeks judicial review of a final decision by the Commissioner of the

Social Security Administration denying her claim for social-security disability insurance ("SSDI")

benefits under Title II of the Social Security Act ("SSA").[2] The plaintiff moved for summary

judgment.[3] The Commissioner opposed the motion and filed a cross-motion for summary

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] Motion for Summary Judgment ("Mot.") – ECF No. 22. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[3] *Id.*

judgment.[4] Under Civil Local Rule 16–5, the matter is submitted for decision by this court without

oral argument.

The court grants the plaintiff's motion, denies the Commissioner's motions, and remands for

further proceedings.

## STATEMENT

### 1. Procedural History

On March 31, 2015, the plaintiff, then age 56, filed a claim for SSDI benefits under Title II of

the SSA.[5] The plaintiff alleged post-traumatic stress disorder ("PTSD") and a torn ligament in her

right ankle.[6] The Commissioner denied the plaintiff's SSDI claim initially and on reconsideration.[7]

The plaintiff timely requested a hearing.[8]

On May 30, 2017 an Administrative Law Judge (the "ALJ") held a hearing and heard

testimony from the plaintiff and a vocational expert ("VE").[9] On October 6, 2017, the ALJ issued

an unfavorable decision.[10] The plaintiff timely appealed the decision to the Appeals Council on

November 29, 2017.[11] The Appeals Council denied her request for review on September 21,

2018.[12]

---

[4] Cross-Mot. – ECF No. 23.

[5] AR 94. Administrative Record ("AR") citations refer to the page numbers in the bottom-right hand corner of the AR.

[6] These are the impairments that the plaintiff asserted in her initial Disability Determination Explanation. AR 94. In the plaintiff's request for reconsideration, she added back pain, which she alleged started in April 2015. AR 110. The ALJ found that the plaintiff had the following severe impairments: affective disorders, anxiety disorders, post-traumatic stress disorder, cervical and lumbar degenerative disc disease, history of ankle sprain, and substance abuse disorder. AR 18, 38. The plaintiff's motion alleges degenerative disc disease of the cervical and lumbar spine, chronic right-ankle pain, bipolar disorder, PTSD, and depression." Mot. – ECF No. 22 at 6.

[7] AR 106, 122 (initial determination); 125, 133 (reconsideration).

[8] AR 140–141.

[9] AR 57–90.

[10] AR 13, 33.

[11] AR 186–187.

[12] AR 1–6.

United States District Court
Northern District of California

On November 16, 2018, the plaintiff timely filed this action for judicial review and subsequently moved for summary judgment on June 13, 2019.[13] The Commissioner opposed the motion and filed a cross-motion for summary judgment on July 11, 2019.[14] The plaintiff filed a reply on August 8, 2019.[15] All parties consented to magistrate-judge jurisdiction.[16]

## 2. Medical Records

### 2.1 Mental-Health Records

The plaintiff submitted the following mental-health records to support her claim for disability: (1) notes from CURA, a residential-drug-rehabilitation clinic where the plaintiff stayed and was treated from August to December 2014;[17] (2) records from the Schuman-Liles Clinic where, from December, 2014 to August, 2015, the plaintiff saw psychiatrist, Kermit Johnson, M.D., for anxiety, depression, and PTSD;[18] (3) notes from the Portia Belle Hume Center where the plaintiff was treated by doctors (including Nithya Narayan, Psy.D., and Nancy Morgan, Ph.D.) and social workers from December 2014 to March 2015;[19] (4) notes from the John George Psychiatric Pavilion where the plaintiff was held under a psychiatric hold (or 5150 under the California Health and Safety Code) in January 2015 and was treated for suicidal ideations in 2017;[20] notes from Kambiz Sakhai, Psy.D., who treated the plaintiff in weekly psychotherapy sessions from January 2016, to at least May 2017, and who filled out a mental-impairment questionnaire for the plaintiff;[21] records form Pathways to Wellness, where the plaintiff was treated for, among other

---

[13] Compl. – ECF No. 1; Mot. – ECF No. 22.

[14] Cross Mot. – ECF No. 23.

[15] Reply – ECF No. 26.

[16] Consent Forms – ECF Nos. 9, 11.

[17] AR 316–414

[18] AR 570–602.

[19] AR 452–480.

[20] AR 415–451, 815–839.

[21] AR 658–701, 840–845.

things, depression, PTSD, and bipolar disorder from several doctors from January 2016 to February 2017;[22] records from the Bay Area Community Services SAGE Program from February 2016 to April 2017, where the plaintiff received counseling from social workers and marriage-family therapists; [23] and a March 2017 psychological examination and medical-source statement from Ute Kollath, Ph.D..[24]

### 2.2 Physical-Health Records

The plaintiff submitted the following physical-health records to support her claim for disability: (1) treatment notes from the Highland Hospital Emergency Department for pain she had in her right hand and right ankle in August 2014;[25] (2) notes from her primary-care physician, Mythri Gollapalle, M.D., at Tri-City Health, from September 2014, to February 2017;[26] (3) 2014 records from Mission Peak Orthopedics where the plaintiff was treated for pain in her right ankle;[27] (4) notes from Nguyen Chiropractic where the plaintiff was treated for back pain resulting from a car accident from May 2015 to August 2015 by Linh Nguyen, M.D.;[28] and a March 2017 physical examination and medical-source statement from Eugene McMillan, M.D..[29]

## 3. Administrative Proceedings

### 3.1 Disability Determination Explanations

During the administrative process, non-examining doctors generated two disability-determination explanations ("DDE"), one on July 25, 2015, for the plaintiff's initial application, and another October 8, 2015, for the reconsideration level.

---

[22] AR 620–646.

[23] AR 702–778.

[24] AR 612–619.

[25] AR 317–322.

[26] AR 481–569, 779–802.

[27] AR 302–315.

[28] AR 846–870.

[29] AR 603–611.

At the initial level, the plaintiff was found to have affective disorders, anxiety disorders, and "Drugs, Substance Addiction Disorders" which were severe, and spine disorders, which were non-severe.[30] Hillary Weiss, Ph.D., developed a mental residual-functioning capacity ("RFC") determining that the plaintiff was moderately limited in her abilities to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting.[31] Dr. Weis determined that the plaintiff was not significantly limited in any other area.[32] Based on these findings, Alan Coleman, M.D., determined the plaintiff was not disabled.[33]

On reconsideration, JoAnne Coyle, Ph.D., had the same mental RFC findings as Dr. Weiss, except she determined that the plaintiff was moderately limited in her ability to understand and remember detailed instructions, accept instructions and respond appropriately to criticism from supervisors and set realistic goals or make plans independently of others.[34] She also found that the plaintiff was "not disabled."[35]

### 3.2 Administrative Hearing

On May 30, 2017, the ALJ held a hearing at which the plaintiff and a vocational expert testified.[36]

---

[30] AR 101.

[31] AR 104–105.

[32] *Id.*

[33] AR 106–107.

[34] AR 120–121.

[35] AR 123.

[36] AR 52–92.

### 3.2.1    Plaintiff's Testimony

The plaintiff said she worked for Wells Fargo for two years, until Wells Fargo fired her (about thirty years ago).[37] Thereafter, she worked as an escort (as a sex-worker) but has not engaged in prostitution since entering CURA in 2014.[38]

The plaintiff stated she was in a car accident that exacerbated her back and neck problems and revealed arthritis was in 90% of her back.[39] She had "a hard time lifting things, turning [her] neck, and [she's] in pain most of the time."[40] The heaviest thing she could carry was "two or three pounds."[41] Her neck pain felt "really sharp and it's like somebody pulling your hair."[42] The pain in her back was "dull, aching pain."[43] The pain limited her, she "can't think straight…."[44] She cannot "go [thirty] minutes after waking up without taking a pain pill" and had a torn ligament in her ankle; an orthopedic surgeon gave her a hydraulic boot but it was not working.[45] She was taking "five psych meds and three pain killers an [she was] losing the lining in [her] stomach."[46] She said that her "neck [was] getting worse" and was going to look into physical therapy.[47]

The plaintiff said many of her issues stemmed from being a victim of child molestation and being abused by her adoptive parents.[48] While she was a sex worker, she took crack cocaine to help her "get through a few clients" and began to use more and more.[49] Her clients Tried to kill her

---

[37] AR 59–60.

[38] AR 71.

[39] AR 61.

[40] *Id.*

[41] AR 81.

[42] AR 80.

[43] AR 81.

[44] *Id.*

[45] AR 62, 64.

[46] AR 64.

[47] AR 68–69.

[48] AR 62, 68.

[49] AR 63.

two or three times, held a gun to her head, robbed her, beat her up, and thrown her out of cars.[50] She was being treated for PTSD and bipolar disorder. [51] She had a lot of nightmares, could not concentrate well, and tried to kill herself twice.[52] She had been sober for eighteen to nineteen months and attended NA meetings.[53] Her prior "brushes with the law" was for "petty stuff; petty theft. Nothing big."[54]

On an ordinary day, the plaintiff wakes up and takes her pain medication and her "psych" pills at night; the medications kept her "comatose" and made it hard to "do too much of anything."[55] She "can't really help with a lot of stuff around the house anymore."[56] She wrote in her journal, watched a lot of TV, talked to her aunt, talked to her sponsor, and went to meetings.[57] Her "back hurt[] all the time" and the "medicine's not working as well as it used to;" she was "building up a resistance."[58] The plaintiff saw a therapist once a week, a psychiatrist once a month, and her primary-care physician every two weeks.[59] She went to the grocery store once or twice a month.[60] When she tried to carry her laundry basket, "pain shot up her back…."[61]

The plaintiff went to "the Box program" for therapy.[62] She no longer socialized because she had "no friends really," she had a family, her sponsor was her friend, and she had difficulty trusting people.[63] When she felt anxious — which was "[a]ll the time, … six out of seven days a

---

[50] Id.

[51] Id.

[52] Id.

[53] AR 65–66.

[54] AR 66.

[55] AR 70.

[56] AR 69–70.

[57] AR 70.

[58] Id.

[59] AR 71.

[60] AR 70, 72.

[61] AR 72.

[62] AR 73.

[63] Id.

week" — she would "go under the covers" and "lay down and pray she would go to sleep[.]"[64] The plaintiff missed appointments, did not want to deal with the public, had nightmares three times a week, woke up in the middle of the night, and took hours-long naps every day due to her anxiety.[65] She was building a resistance to the medication she took for her nightmares.[66] The plaintiff experienced depression and felt irritable or angry every day and had trouble concentrating and focusing.[67] She needed reminders to take her medication and pick up refills.[68]

After she stopped using crack, "[e]verything got worse. [Her] outlook got better until [she] started having all the problems and getting help for different things and then started going downhill."[69]

### 3.3    Vocational Expert Testimony

The VE said that the plaintiff had "no legitimate or legal past work."[70]

The VE testified that a hypothetical person of the plaintiff's age and education — who was limited to standing for four hours, walking for two hours, operating foot controls with her right foot and left foot occasionally, climbing ramps and stairs occasional but never ladders, ropes or scaffolds, and could not work at unprotected heights — could work as a linen attendant (DOT 222387010), senior industrial (DOT 381687018), and a ticket taker (DOT 344667010).[71] The VE said there were no jobs in the national economy for a second hypothetical individual, who was the same as the first, but would be "absent one day per month" and "late for work two days per

---

[64] AR 74.

[65] AR 73.

[66] AR 74–76.

[67] AR 77−79.

[68] AR 80.

[69] AR 81–82.

[70] AR 85.

[71] AR 85−86.

month" by thirty minutes on an unscheduled basis" because the individual would "get laid off or let go or fired."[72]

The plaintiff's attorney asked the VE a hypothetical that assumed the plaintiff's age and education and a long list of limitations.[73] The VE could not take the entire list of limitations as a whole into consideration, but responded that the following limitations, taken individually, would preclude an individual from work: being absent four times a month, being off task consistently 30 percent of the day, responding to requests, suggestions, criticisms from supervisors if they had a hard time or an outburst more than twenty percent of the time, and adapting to changes.[74]

### 3.4 Administrative Findings

The ALJ followed the five-step sequential evaluation process to determine whether the plaintiff was disabled and concluded she was not.[75]

At step one, the ALJ found that that the plaintiff had not engaged in substantial gainful activity since her application date of March 31, 2015.[76]

At step two, the ALJ found that the plaintiff had the following severe impairments: "Affective Disorders; Anxiety Disorder; Post-Traumatic Stress Disorder (PTSD); Cervical and Lumbar Degenerative Disc Disease; History of Ankle Sprain; and Substance Abuse Disorder[.]"[77]

At step three, the ALJ found that the plaintiff had an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.[78] Specifically, the "paragraph A" criteria were satisfied because her mental impairments, including the substance use disorders, met the listings 12.04 affective disorder, 12.06 anxiety related disorders, and 12.15

---

[72] AR 86−87.

[73] AR 88.

[74] AR 89–90.

[75] AR 13–28, 33–49.

[76] AR 18, 38.

[77] *Id.*

[78] AR 19, 39.

trauma- and stressor-related disorders.[79] The plaintiff satisfied "paragraph B" criteria because the plaintiff's mental impairments cause at least two "marked" limitations or one "marked" limitation.[80] The ALJ found that she had a marked limitation in (1) understanding, remembering, and applying information; (2) in interacting with others; in concentrating, persisting, or maintaining pace; and (3) in managing herself.[81] When the plaintiff was under the influence of substances, she had "marked limitations in all areas of mental functioning."[82]

The ALJ found that if the plaintiff stopped using illicit substances, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities; therefore, she would continue to have a severe impairment or combination of impairments.[83] The ALJ stated that the plaintiff's "mental condition significantly improved following medication management and abstinence from drugs," but "even during periods of sustained sobriety, the claimant continued to be treated for affective and PTSD related symptoms," and "there is no evidence that the claimant's physical impairments are neither caused nor exacerbated by her substance use, and they remain at the same level of severity."[84]

The ALJ held that if the plaintiff stopped using illicit substances, the remaining impairments or combination of impairments would not meet or medically equal any of the impairments in the "paragraph B" criteria.[85] For the plaintiff's physical impairments, there was insufficient evidence to satisfy the pertinent requirements under 1.02 (major dysfunction of a joint(s)) and 1.04 (disorders of the spine).[86] The plaintiff did not have the "manipulative restrictions to meet listing

---

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] AR 20, 40.

[84] *Id.*

[85] *Id.*

[86] *Id.*

level severity" and would "not result in an extreme limitation of the ability to walk."[87] For the plaintiff's mental impairments, there was insufficient evidence to satisfy the pertinent requirements under 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.15 (trauma- and stressor-related disorders).[88] The plaintiff would have moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace and mild limitations in interacting with others and adapting or managing oneself. [89]

The ALJ also found that the "paragraph C" criteria would not be satisfied.[90] The plaintiff showed adequate mental functioning "outside inpatient treatment/hospitalization adjusted to various life stressors, and with medication compliance" and that "no State agency psychological consultant concluded that a mental listing is medically equaled if the claimant stopped the substance use."[91]

At step four, the ALJ determined that the plaintiff had the residual-functional capacity ("RFC") to perform a medium range of work at all exertional levels limited to simple, routine, and repetitive tasks if she stopped the substance use.[92]

At step five, the ALJ found that the plaintiff had no past relevant work to examine and so transferability of job skills was not relevant.[93] The plaintiff was defined as an individual of advanced age on the date the application was filed.[94] She had a high-school education and can communicate in English.[95] Considering the plaintiff's RFC, age, education, and work experience

---

[87] *Id.*

[88] *Id.*

[89] AR 20–21, 40–41.

[90] AR 22, 42.

[91] *Id.*

[92] *Id.*

[93] AR 27, 47.

[94] *Id.*

[95] *Id.*

in conjunction with the Medical-Vocational Guidelines, the ALJ concluded she was "not disabled" under the framework of section 203.14.[96] The ALJ concluded that the substance-abuse disorder was a contributing factor material to the determination of disability because the plaintiff would not be disabled if she stopped the substance use, and thus she was not disabled.[97]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal citation and quotation marks omitted); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097– 98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

A claimant is considered disabled if (1) she suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or

---

[96] AR 28, 48.

[97] *Id.*

impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows.

**Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two**. Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. See 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

*Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Human Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends that the ALJ erred by (1) improperly weighing medical-opinion evidence, (2) finding that her testimony was not credible, (3) improperly assessing the materiality

of drug and alcohol abuse, (4) failing to base the plaintiff's RFC on substantial evidence; and (5) failing to base his step-five findings on substantial evidence.[98]

For the reasons below, the court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands for further proceedings consistent with this order.

## 1. Whether the ALJ Erred in Weighing Medical-Opinion Evidence

The plaintiff contends that the ALJ erred by (1) rejecting the opinion of consultative examiner Dr. McMillan, (2) rejecting the opinions of treating psychiatrists Dr. Newsom and Dr. Chopra, (3) rejecting the opinion of treating psychologist Dr. Sakhai, (4) ignoring the opinions of treating clinicians Dr. Johnson, Dr. Narayan, Dr. Morgan, and Dr. Caruso-Maxey, and (5) rejecting the opinions of treating social workers Chika and A'za Williams.[99]

The court holds that the ALJ erred in weighing the opinions of Drs. Newsom, Chopra, Sakhai, Narayan, Morgan, and Caruso-Maxey.

### 1.1 Legal Standard

The ALJ is responsible for "'resolving conflicts in medical testimony and for resolving ambiguities.'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews*, 53 F.3d at 1039). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528

---

[98] Mot. – ECF No. 22 at 13–28.

[99] *Id.* at 13–20.

F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).[100] Social Security regulations distinguish between three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [non-examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester*, 81 F.3d at 830); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ, "may disregard the opinion of a treating physician, whether or not controverted." *Andrews*, 53 F.3d at 1041. "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (alteration in original) (internal quotation marks and citation omitted). By contrast, if the ALJ finds that the opinion of a treating physician is contradicted, a reviewing court will require only that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotation marks and citation omitted); *see Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (internal quotation marks and citation omitted). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the

---

[100] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective March 27, 2017. The previous version, effective to March 26, 2017, applies here. *See* 20 C.F.R. § 404.614(a).

quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion...." *Orn*, 495 F.3d at 631. (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can consider some portions less significant than others).

"A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability." *Alcala v. Colvin*, SACV 12–0626 AJWW, 2013 WL 1620352, at *5 (C.D. Cal., Apr. 15, 2013) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)). "However, a treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record." *Id.* (citing *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001)). "Even when not entitled to controlling weight, 'treating source medical opinions are still entitled to deference and must be weighed' in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. *Id.* (quoting *Edlund*, 253 F.3d at 1157 & n.6).

The ALJ must consider the opinions of other "medical sources who are not acceptable medical sources and [the testimony] from nonmedical sources." 20 C.F.R. § 404.1527(f). The ALJ is required to consider observations by "other sources" as to how an impairment affects a claimant's ability to work. *Id.* Nonetheless, an "ALJ may discount [the] testimony" or an opinion "from these other sources if the ALJ gives … germane [reasons] for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotations and citations omitted). "[A]n opinion from a medical source who is not an acceptable medical source may outweigh the medical opinion of an acceptable medical source[.]" 20 C.F.R. § 404.1527(f)(1). "For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the

evidence as a whole." *Id.*

### 1.2 Dr. McMillan

Dr. McMillan examined the plaintiff and filled out a medical-source statement opining that the plaintiff was limited to the full range of light-exertional work in March of 2017.[101] The ALJ gave little weight to his opinion, and the plaintiff contends this was error.[102]

Dr. McMillan is an examining physician and his opinion is contradicted. Thus, the ALJ was required to give specific and legitimate reasons based on substantial evidence to discount his opinion. *Garrison*, 759 F.3d at 1012

The ALJ gave Dr. McMillan's opinion little weight because of the following:

> Dr. McMillan limited the claimant to the full range of light exertion, and able to engage in activities that require stooping, kneeling, and crouching for more than one third of a workday.... The undersigned gives little weight to this assessment because her conservative yet infrequent treatment for her physical impairments, and her good response to chiropractic treatment, show that she is not as limited as alleged or assessed by Dr. McMillan.[103]

This is a specific and legitimate reason that is supported by substantial evidence.

Dr. Nguyen, a chiropractor, treated the plaintiff for neck and back pain between May and August 2015 following her car accident.[104] Notes from the plaintiff's appointments with Dr. Nguyen indicate the plaintiff improved to mostly normal ranges of motion in her back and self-reported 90% improvement on her last appointment. The above reasons the ALJ provided are based on these findings. Because Dr. Nguyen is a treating source, with specialized knowledge, who treated the plaintiff multiple times, her opinion and findings trump those of Dr. McMillan. *Holohan*, 246 F.3d 1195 (A treating physician's opinion carries more weight than an examining physician's.). The ALJ did not err here.

---

[101] AR 603–605.

[102] AR 45; Mot. – ECF No. 22 at 14–16.

[103] AR 25, 45.

[104] AR 851–862, 863–864, 865–866, 867–868.

### 1.3 Dr. Newsom and Dr. Chopra

Peter Newsom, M.D., and Kapil Chopra, M.D., among others, treated the plaintiff from January 2016 to February 2017 at Pathways to Wellness and diagnosed her with PTSD and bipolar disorder.[105] The ALJ gave little weight to their opinions.[106] The plaintiff argues this was error.[107]

The opinions of the providers at Pathways to Wellness are contradicted by the non-examining sources of record, and therefore the ALJ was required to provide specific and legitimate reasons based on substantial evidence in the record to reject them. *Reddick*, 157 F.3d at 725.

The ALJ gave little weight to their opinions for the following reason:

> The claimant was under sustained remission from drug abuse other than marijuana use during this period. The undersigned gives overly restrictive and inconsistent with the GAF scores contained in the same treatment notes. The GAF scores[,] ranging between 55 and 65, indicated only mild and/or moderate limitations in social and occupational functioning despite the assessed marked/severe functional limitations…. These marked limitations are also inconsistent with the objective findings that consistently document good/fair attention and concentration, and intact immediate, remote and recent memory.[108]

First, the ALJ argues that the assessments were overly restrictive and inconsistent with the GAF scores given to the plaintiff. This reason is not supported by substantial evidence. Dr. Newsom found that the plaintiff had mild restriction of activities of daily living, marked difficulties in maintaining social functioning and relationships and maintaining concentration, and extreme episodes of decomposition and increase of symptoms for extended durations.[109] Dr. Chopra noted that the plaintiff was unable to live independently because of hallucinations and limited insight and had a severe difficulty with socialization and medication compliance due to missing medication appointments.[110] The court does not find that these are overly restrictive findings. Although both doctors gave the plaintiff GAF scores ranging from 55 to 65,[111] which

---

[105] AR 624–646.

[106] AR 21, 41.

[107] Mot. – ECF No. 22 at 16–17.

[108] AR 21, 41.

[109] AR 628.

[110] AR 644.

[111] *See* AR 628–629, 634, 636, 642.

United States District Court
Northern District of California

conflict somewhat with their findings, the plaintiff argues persuasively that those GAF scores, by themselves, are not sufficient grounds to discount the treating doctors' findings. *See Macias v. Colvin*, No. 1:15-cv-00107-SKO, WL 1224067 at *8 (E.D. Cal. Mar. 29, 2016) ("Although the ALJ is to weigh the medical evidence and interpret it, … he or she is not empowered to independently assess clinical findings and reject multiple medical opinions based on the ALJ's own independent interpretation of unexplained GAF scores[.]") (citing *Tackett*, 180 F.3d at 1103–02) (internal citations omitted). This reason was not based on substantial evidence.

The ALJ's contentions — that the marked findings from the providers at Pathways to Wellness are "inconsistent with the objective findings that consistently document good/fair attention and concentration, and intact immediate, remote and recent memory" — lack the specificity required. *See Williams v. Astrue*, No. ED CV 08-549-PLA, 2010 WL 431432, at *6 (C.D. Cal. Feb 1, 2010) ("[T]o the extent that the ALJ determined that Dr. Porcelli's October 2004 opinion was inconsistent with the objective evidence that was an inadequate reason to reject Dr. Porcelli's findings as it fails to reach the level of specificity required for rejecting and opinion of a treating physician") (citing *Embrey v. Bowen*, 849 F.2d 418, 421–23 (9th Cir.1988). Furthermore, the ALJ does not point to such specific findings of good attention, concentration, or memory in the record; he referred to them only generally. This is not a specific or legitimate reason supported by substantial evidence.

The court finds the ALJ erred by weighing the opinions of the treating doctors at Pathways to Wellness.

### 1.4 Dr. Sakhai

Dr. Sakhai, a psychologist, treated the plaintiff for, among other things, PTSD, depression, and anxiety, in weekly psychotherapy sessions from January 2016 to February 2017, and he wrote a medical-source statement.[112] The ALJ accorded his opinions little weight, and the plaintiff contends that this was error.[113]

---

[112] AR 659–701.

[113] AR 21, 41; Mot. – ECF No. 22 at 17–19.

1    Dr. Sakhai is a treating source, and his opinions are contradicted. Thus, the ALJ was required

2    to provide specific and legitimate reasons based on substantial evidence in the record to discount

3    his opinions. *Reddick*, 157 F.3d at 725.

4        The ALJ provided the following reasons to accord Dr. Sakhai little weight:

5        Kambiz Sakhai, Psy.D., another treating psychiatrist, indicated mostly marked limitations
         in understanding, remembering, and applying information; in interacting with others;
6        adapting and managing oneself, and ability to have only marginal adjustment in daily life
         (Exhibits 16F). This assessment indicating listing level severity is given little weight
7        because it is inconsistent with the claimant's treatment notes following her sustained
         sobriety from substances other than marijuana. First, Dr. Sakhai provided his assessment
8        on a check-box form with no explanation for the severity of these limitations or any
         evidence of correlated objective findings that would support the degree of these
9        limitations. Second, looking at his treatment notes, other than the initial mental status
         evaluation, he did not provide subsequent objective evaluations to assess her improved
10       condition, even though he noted after most sessions that she expressed satisfaction with
         therapy and had improved symptoms.[114]

12   These reasons were not specific, legitimate, or supported by substantial evidence.

13       First, the ALJ cannot conclude that Dr. Sakhai's opinions are inconsistent with the plaintiff's

14   treatment notes after her sobriety without identifying the inconsistencies and without referencing

15   specific pieces of evidence (e.g. a particular medical-source statement or findings from an

16   examination). In *Belanger v. Berryhill*, the Ninth Circuit found that it was error for an ALJ to

17   reject the opinion of a treating physician because it was purportedly "inconsistent with the record

18   as a whole," and it "appeared to be based on [the plaintiff's] subjective reporting of pain." 685

19   Fed. Appx. 596, 598 (9th Cir. 2017). Here, the ALJ's critique was similarly "boilerplate criticism"

20   and was "insufficient to reject a treating physician's opinion…." *Id.*

21       Second, forms with check-boxes may be persuasive opinion evidence when well supported. In

22   *Garrison*, the Ninth Circuit held that it was an egregious and important error to discount the

23   check-list box that was "based on the [treating source's] significant experience" with the plaintiff

24   and "supported by numerous records." 759 F.3d 1013. Similarly in *Fleenor v. Berryhill*, the Ninth

25   Circuit held it was error for an ALJ to give little weight to a treating source's check-box

---

[114] AR 21, 41.

United States District Court
Northern District of California

assessment without evaluating "length, nature, and extent of the treatment relationship; frequency of examination; supportability; and consistency with the overall record." 752 Fed. Appx. 451, 452 (9th Cir. 2018). Dr. Sakhai's treatment notes for the 13 months that he treated the plaintiff provided ample evidence of the plaintiff's psychological symptoms and how they affected her daily life. For example, he detailed how nightmares prevented her from sleeping, which affected her ability to function during the day, how apathy and anhedonia prevented her from leaving the house, and how her memory and concentration issues worsened over time.[115] The ALJ overlooked this evidence and did not consider the length, nature, and extent of their treatment relationship or consistency with the other opinions. This was error.

Third, criticizing Dr. Sakhai's opinions for failing to have objective evaluations is not a legitimate ground supported by substantial evidence. As the court held in *Ortiz v. Colvin*, "courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine." No. 2:15-cv-1456 AC, 2016 WL 4992674, *6 (E.D. Cal. Sept. 19, 2016) (quoting *Lebus v. Harris*, 526 F. Supp. 56, 60 (N.D. Cal. 1981); *Averbach v. Astrue*, 731 F. Supp. 2d 977, 986 (C.D. Cal. 2010). "The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique." *Id.* Furthermore, Dr. Sakhai's notes contain observations of the plaintiff's objective symptoms to support his restrictive findings.[116]

The ALJ failed to provide specific and legitimate reasons to accord Dr. Sakhai's opinions little weight and thus, erred

---

[115] AR 676–79, 682–683, 685–686, 689–690, 692, 694, 698–699, 701.

[116] AR 675–676, 677–701.

### 1.5 Dr. Johnson, Dr. Narayan, Dr. Morgan, and Dr. Caruso-Maxey

The plaintiff argues that the ALJ failed to discuss the opinions of Dr. Johnson, who treated the plaintiff at the Schuman-Liles Clinic, or Drs. Narayan, Morgan, or Caruso-Maxey, who treated her at the Portia Belle Hume center, and that this was error.[117]

The Ninth Circuit has held that "[b]ecause a court must give 'specific and legitimate reasons' for rejecting a treating doctor's opinions, it follows even more strongly that an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them." *Marsh v. Colvin*, 792 F.3d 1170, 1172–73. (9th Cir. 2015). While the ALJ did discuss Dr. Johnson's findings in his decision,[118] the ALJ did not address those of the other three providers at issue, and the Commissioner concedes as much.[119] This is error.

### 1.6 Chika and A'Zah Williams

Chika and A'Zah Williams are social workers for the Sage program, where the plaintiff was treated between October 2016 and April 2017.[120] They are considered "other sources." Their opinions are contradicted by treating physicians in the record. Thus, the ALJ must provide germane reasons for rejecting their opinions. *See Molina*, 674 F.3d at 1111.

The ALJ rejected their testimony because:

> Her complaints of uncontrolled PTSD related symptoms to these therapists are contradicted by her reports to Dr. Newsom[] regarding her good response to her medications, improved symptoms, decreased nightmares, and controlled mood swings (See Exhibit 9F/21; 12F/15). Though she voluntarily checked herself into the hospital in February 2017, secondary to suicidal ideation and increased depression, on exam, she denied any delusions, hallucination, and was cooperative without any evidence of psychomotor agitation or retardation. She was started on Depakote, Risperdal, and Prozac (Exhibit 15F/2). She was diagnosed with schizoaffective disorder, bipolar type. After a night's sleep, the claimant's condition improved and she was discharged in stable condition….[121]

---

[117] Mot. – ECF No. 22 at 19–20.

[118] AR 24, 44.

[119] Cross-Mot. – ECF No. 23 at 7.

[120] AR 722–727, 731–33, 738, 741, 745, 749–54, 753–54, 767–775.

[121] AR 25, 45.

Here, the ALJ rejected the social workers' opinions because they were inconsistent with the opinion of Dr. Newsom, a psychiatrist who is entitled to greater weight. *Id.* at 1112 (citing *Holohan*, 246 F.3d at 1202 (the regulations give more weight to the opinions of specialists concerning matters relating to their specialty than they do to opinions of non-specialists)). This a germane reason for rejecting their opinion evidence .

### 2. Whether the ALJ Improperly Rejected the Plaintiff's Testimony

The plaintiff argues that the ALJ erred by rejecting her testimony, specifically, by failing identify what parts of her testimony were not credible and by failing to supply clear and convincing reasons supported by substantial evidence.[122]

The ALJ found the following about the plaintiff's testimony:

> [T]he claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence.[123]

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether [the claimant has presented] 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Vasquez, 572 F.3d at 591*). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* (internal quotation marks and citations omitted). "At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Id.* at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness,

United States District Court
Northern District of California

---

[122] Mot. – ECF No. 22 at 20.
[123] AR 25, 45.

inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal punctuation omitted). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see, e.g.*, *Morris v. Colvin*, No. 16-CV-0674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

The ALJ discredited the plaintiff's testimony, in part, based on his assessment of the medical-opinion evidence. Because the court remands for reconsideration of that medical evidence, the court remands on this ground too. The ALJ can reassess the plaintiff's credibility in context of the entire record.

### 3. Whether the ALJ Erred by Assessing the Materiality of the Substance Abuse.

The plaintiff contends that the ALJ erred because his materiality finding is not supported by substantial evidence.[124] The ALJ found that if the plaintiff stopped her substance abuse, then she would have the RFC to perform medium work limited to simple, routine, and repetitive tasks.[125]

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). "Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits 'if alcoholism or drug addiction would... be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting 42 U.S.C. § 423(d)(2)(C)) (alteration in original).

The Ninth Circuit has held that when a Social Security disability claim involves substance abuse, the ALJ must first conduct the five-step sequential evaluation without determining the impact of substance abuse on the claimant. *Bustamante*, 262 F.3d at 954–55. If the ALJ finds that

---

[124] Mot. – ECF No. 22 at 26.

[125] AR 22, 42.

the claimant is not disabled, then the ALJ proceeds no further. *Id.* at 955. If, however, the ALJ finds that the claimant is disabled, then the ALJ conducts the sequential evaluation a second time and considers whether the claimant would still be disabled absent the substance abuse. *Id.* (citing 20 C.F.R. §§ ; C.F.R. § 404.1535, 416.935); *Parra*, 481 F.3d. at 747 (under the Social Security Act's regulations, "the ALJ must conduct a drug abuse and alcoholism analysis" to determine "which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol.") (citing 20 C.F.R. § 404.1535(b)). The Ninth Circuit has stressed that courts must not "fail to distinguish between substance abuse contributing to the disability and the disability remaining after the claimant stopped using drugs or alcohol." *Kroeger v. Calvin*, 2015 WL 2398398, at *10 (N.D. Cal. May 19, 2015) (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998)). "Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too." *Id.* The claimant has the burden to prove that the drug or alcohol abuse is not a contributing factor material to disability. *Parra*, 481 F.3d at 748.

Because the court remands for a reweighing of medical-opinion evidence and the plaintiff's testimony, and because the materiality of drug and alcohol abuse was based on those assessments, the court remands on this ground too.

### 4. Whether the ALJ's RFC is Supported by Substantial Evidence

The plaintiff argues that the ALJ erred because his RFC determination was not supported by substantial evidence.[126] The ALJ found that "[i]f the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except is limited to simple, routine, and repetitive tasks."[127] Because the court remands for a reweighing of medical-opinion evidence and the plaintiff's testimony, and because the RFC was based on those assessments, the court remands on this ground too.

---

[126] Mot. – ECF No. 22 at 26.

[127] AR 27, 47.

**5. Whether the ALJ's Step-Five Finding is Supported by Substantial Evidence**

The plaintiff argues that the ALJ erred when he used the Medical Vocational Guidelines to find the plaintiff not disabled.[128]

At step five, the ALJ said that he "must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines ("MVD")" to determine whether an adjustment to other work can be made.[129] Using the MVD's framework, the ALJ found that:

> If the claimant stopped the substance use, the claimant would not have the residual functional capacity to perform the full range of medium work. However, the additional limitations that would remain have little or no effect on the occupational base of unskilled medium work. Considering this residual functional capacity, and the claimant's age, education and work experience, a finding of "not disabled" is therefore appropriate under the framework.[130]

Because the court remands for a reweighing of medical-opinion evidence and the plaintiff's testimony, and because step-five was based on those assessments, the court remands on this ground.

### CONCLUSION

The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands for further proceedings consistent with this order.


**IT IS SO ORDERED.**

Dated: March 24, 2020

_____
LAUREL BEELER
United States Magistrate Judge

---

[128] Mot. – ECF No. 22 at 27.

[129] AR 27, 47.

[130] AR 28, 48.